1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

SHOPIFY INC., et al.,

Case No.  20-mc-80091-JSC

8

Plaintiffs,

9

v.

**ORDER RE PLAINTIFS' MOTION TO COMPEL AND ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL**

10

EXPRESS MOBILE, INC.,

11

Defendant.

12        This miscellaneous action arises out of an underlying patent dispute between Shopify and

13    Express Mobile, Inc. ("Express Mobile" or "Defendant") currently pending in the United States

14    District Court for the District of Delaware.  *See Shopify (USA), Inc., et al v. Express Mobile, Inc*.,

15    Civil No. 19-cv-439 (RGA).  On March 1, 2019, Shopify filed a complaint for declaratory

16    judgment of non-infringement against Express Mobile relating to specific patents.  Steven Vosen,

17    Ph.D, ("Dr. Vosen") is a patent agent for whom Express Mobile is a former client.  He is not a

18    party to the parties' current patent litigation. In this action Shopify seeks to compel Dr. Vosen to

19    produce documents and other information pursuant to Federal Rule of Civil Procedure 45.  (Dkt.

20    No. 1-4 at 5.)[1]  Having considered the parties' arguments and having had the benefit of oral

21    argument on July 16, 2020, and having reviewed *in camera* 30 sample documents (15 selected by

22    Plaintiff, 15 selected by Dr. Vosen) the Court ORDERS that Dr. Vosen produce to Plaintiff certain

23    documents provided to this Court for *in camera* review.  The Court also GRANTS in part and

24    DENIES in part Shopify's administrative motion to seal, and GRANTS in part and DENIES in

25    part Dr. Vosen's administrative motion to seal.

26

27

28    [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generate page numbers placed at the top of the documents.

**BACKGROUND**

On July 2, 2019, Shopify served Dr. Vosen with a subpoena for testimony and documents. (Dkt. No. 1-4 at 8.)  On September 5, 2019, Dr. Vosen served his initial privilege log; on September 7, 2019, he submitted a first supplemental privilege log.  (Dkt. No. 17-6 at 2 ¶¶ 2-3.) On September 11, 2019, Dr. Vosen was deposed by Shopify's counsel; on September 12, 2019, Dr. Vosen submitted a second supplemental privilege log.  (*Id.* at ¶¶ 4-5.)  From September 2019 through April 2020, Shopify corresponded with Express Mobile regarding various deficiencies and supplements to Dr. Vosen's privilege logs.  (*See* Dkt. No. 17-6.)  On April 27, 2020, Shopify's counsel contacted Dr. Vosen's counsel regarding missing descriptions it identified on Dr. Vosen's eighth supplemental privilege log.  (Dkt. No. 17-6 at 4 ¶ 33.)  Dr. Vosen served a ninth supplemental privilege log the same day.  (*Id.*)  Shopify filed the instant motion to compel on May 21, 2020, alleging that Dr. Vosen has improperly claimed certain documents are privileged.  (Dkt. No. 1 at 22.)

**DISCUSSION**

**I.    *In Camera* Review and Shopify's Motion to Compel**

Producing a privilege log is a recognized means of sufficiently establishing a privilege.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).  "To empower the district court to review [] disputed materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged."  *Id.* at 1075.  This is a "minimal" burden, and—if met—"the decision whether to conduct the review rests within the discretion of the district court."  *Id.* at 1074-75.

After considering the parties' arguments, this Court determined that Shopify met its burden showing that *in camera* review of the disputed documents was appropriate. At oral argument on July 16, 2020, the Court then ordered the parties to produce a sample of 15 documents each from Dr. Vosen's privilege log for *in camera* review.

The Court now addresses the parties' arguments regarding: the timeliness of Shopify's motion to compel; the applicability of the attorney-client, patent-agent, and work product

United States District Court
Northern District of California

privileges to the specific documents produced for *in camera* review; and the extent to which the inclusion of certain third-parties on communications involving Dr. Vosen waived any privilege that would otherwise attach to the disputed documents.

### A. Timeliness of Shopify's Motion to Compel

As a threshold matter, Dr. Vosen argues that Shopify's motion is "unduly and unjustifiably delayed," and that this reason compels this Court to deny the motion. (Dkt. No. 12-4 at 16.)

"In general, the filing of a motion to compel discovery prior to the ordered deadline supports a finding the motion is timely, and a finding of untimeliness in that scenario will be rare." *Stevenson v. Holland*, No. 116CV01831AWIJLT, 2019 WL 4747644, at *6 (E.D. Cal. Sept. 30, 2019) (citation omitted); *see also Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) ("A motion to compel filed during the discovery period [will] rarely be considered untimely."). The Court finds that because Shopify filed its motion prior to the close of the discovery period its motion is timely. Further, given the number of times Dr. Vosen supplemented his log, it was not unreasonable for Shopify to make efforts to resolve any dispute before filing a motion to compel.

### B. Attorney-Client Privilege

Dr. Vosen alleges the attorney-client privilege shields over 30 entries on his privilege log, and 13 of the 30 sample documents produced for *in camera* review. (Dkt. No. 17-4 at 15.)

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice . . . as well as an attorney's advice in response to such disclosures." *In re Grand Jury Investigation*, 974 F.2d at 1070. It recognizes that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc*., 647 F.2d 18, 24 (9th Cir. 1981)). The party asserting the attorney-client privilege has the burden of proving that the privilege "applies to a given set of documents or communications." *In re Grand Jury Investigation*, 974 F.2d at 1070. *In camera* review "must be conducted with respect for the

United States District Court
Northern District of California

attorney-client privilege." *Id.* at 1072.

Shopify notes that "the vast majority [] do not involve an attorney"; Dr. Vosen counters that "it does not matter" that no attorney appears on the challenged communications. (Dkt. No. 12-4 at 24.) Dr. Vosen cites *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003), for the proposition that "[c]ommunications between non-lawyer employees about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege." However, the *AT&T* court elaborated that "[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice and *later communicated* to counsel are protected by attorney-client privilege." *Id.* (emphasis added). This analysis comports with the requirement that legal advice must be sought in order for the attorney-client privilege to shield information. *See United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (noting that "[t]ypically, an eight-part test determines whether information is covered by the attorney-client privilege," and the first inquiry is whether "legal advice of any kind is sought") (citing *In re Grand Jury Investigation*, 974 F.2d at 1071 n.2).

Additionally, for the attorney-client privilege to attach, the document must itself satisfy the privilege's requirements—the inclusion of an attorney on the communication does not itself bring a document within the privilege's ambit. *See United States v. Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at *2 (N.D. Cal. May 30, 1996) ("The attorney-client privilege does not attach, however, to documents which were prepared for simultaneous review by both legal and nonlegal personnel[.]") (citation omitted); *see also United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice.").

Of the 13 documents[2] over which Dr. Vosen claims an attorney-client privilege, none qualify for its protection. All were either generated for simultaneous review by legal and non-

United States District Court
Northern District of California

---

[2] VOSEN0000029; VOSEN-PRIV-0234; VOSEN-PRIV-0318; VOSEN-PRIV-0380; VOSEN-PRIV-0385; VOSEN-PRIV-0386; VOSEN-PRIV-0399; VOSEN-PRIV-0405; VOSEN-PRIV-0424; VOSEN-PRIV-0425; VOSEN-PRIV-0456; VOSEN-PRIV-0458; VOSEN-PRIV-0467.

legal personnel, or fail to seek any legal advice as required by the privilege.  While other privileges may shield these communications, these specific documents do not qualify for the attorney-client privilege.

### C.  Patent-Agent Privilege

Dr. Vosen argues that, because he is a patent agent, the absence of an attorney "does not matter" because his presence makes applicable the patent-agent privilege.  (Dkt. No. 12-4 at 24.)

The Federal Circuit recognizes a "patent-agent privilege" extending to communications between clients and patent agents.  *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1296 (Fed. Cir. 2016)  ("To the extent, therefore, that the traditional attorney-client privilege is justified based on the need for candor between a client and his or her legal professional in relation to the prosecution of a patent, that justification would seem to apply with equal force to patent agents[.]").  The privilege's application must be "carefully construed" and, as such, only "[c]ommunications between non-attorney patent agents and their clients that are . . . reasonably necessary and incident to the preparation and prosecution of patent applications or other proceeding before the [Patent] Office involving a patent application or patent in which the practitioner is authorized to participate" receive the benefit of the patent-agent privilege.  *Id.* at 1301; *see also TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. SACV1400341JVSANX, 2016 WL 6921124, at *3 (C.D. Cal. May 3, 2016) ("[The Federal Circuit] construed the patent agent privilege narrowly, in accordance with the scope of the patent agent's ability to practice before the Office under 37 C.F.R. § 11.5(b)(1).") (internal quotations and citations omitted).  The patent-agent privilege is "narrower than the scope of the attorney-client privilege."  *TCL Commc'ns Tech. Holdings Ltd.*, 2016 WL 6921124, at *3; *see also Onyx Therapeutics, Inc. v. Cipla Ltd.*, No. CV 16-988-LPS, 2019 WL 668846, at *2 (D. Del. Feb. 15, 2019) (noting the patent-agent privilege is "narrower" than the attorney-client privilege).

As with the attorney-client privilege, here "[t]he burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege." *In re Queen's Univ*, 820 F.3d at 1301.  "[T]he party asserting patent-agent privilege bears the burden of showing specifically that the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   communications in dispute are 'reasonably necessary and incident to the preparation and

2   prosecution of patent applications or other proceeding[.]'" *Luv N' Care, Ltd. v. Williams*

3   *Intellectual Prop.*, No. CV18MC00212WJMKLM, 2019 WL 2471318, at *4 (D. Colo. June 12,

4   2019). "Communications with a patent agent who is offering an opinion on the validity of another

5   party's patent in contemplation of litigation," for instance, "or for the sale or purchase of a patent,

6   or on infringement, are not reasonably necessary and incident to the preparation and prosecution

7   of patent applications or other proceeding before the [Patent] Office." *In re Queen's Univ.*, 820

8   F.3d at 1301-1302 (internal quotations omitted).

9       Dr. Vosen claims the patent-agent privilege on all 30 documents the parties produced.  The

10  Court finds that, of these 30 documents, the following fall within the patent-agent privilege

11  because they are reasonably necessary and incident to the preparation and prosecution of patent

12  applications before the U.S. Patent and Trademark Office ("USPTO"): ~~VOSEN0000091~~; VOSEN-

13  PRIV-0096; VOSEN-PRIV-0072; VOSEN-PRIV-0115; VOSEN-PRIV-0118; VOSEN-PRIV-

14  0123; VOSEN-PRIV-0126; VOSEN-PRIV-0136; VOSEN-PRIV-0138; VOSEN-PRIV-0157;

15  VOSEN-PRIV-0159; VOSEN-PRIV-0234; VOSEN-PRIV-0258; VOSEN-PRIV-0574; VOSEN-

16  PRIV-0579; VOSEN-PRIV-0638.  While some of the remaining documents include Dr. Vosen,

17  this fact does not alone make them privileged. They are not aimed at the USPTO, or necessary or

18  incident to any patents' preparation or prosecution; many[3] are communications concerning patent

19  infringements—a category of patent-related communications *In re Queen's University* specifically

20  held are not covered by the privilege.  *See* 820 F.3d at 1301-1302.  Others[4] either fail to mention

21  the preparation or prosecution of patent applications, *see Luv N' Care*, 2019 WL 2471318, at *5,

[3] *See* VOSEN-PRIV-0380; VOSEN-PRIV-0385; VOSEN-PRIV-0399; VOSEN-PRIV-0405;
VOSEN-PRIV-0424; VOSEN-PRIV-0425.

[4] *See* VOSEN-PRIV-0456 (concerning "Cash equivalent Sales Price Analys[es]" and "Operating
Companies and Consortiums"); VOSEN-PRIV-0458 (concerning language for a patent
monetization agreement); VOSEN-PRIV-0467 (concerning Express Mobile's patent enforcement
and litigation in federal court); VOSEN-PRIV-0386 (concerning preparation of an unspecified
document); VOSEN0000029 VOSEN-PRIV-0318 (sending published patent application that is no
longer in need of preparation or prosecution to employees);  VOSEN0000041 and VOSEN-PRIV-
0299 (concerning "next steps" in negotiation process, under which Mr. Rempell's brief and
ancillary request that Dr. Vosen file a planned response rather than an appeal to an unspecified
Patent Office Action was not reasonably necessary or incident to patent preparation or
prosecution).

or are not reasonably necessary and incident to the preparation and prosecution of patent

applications, *see In re Queen's Univ. at Kingston*, 820 F.3d at 1301.

### D.  Work Product Privilege

Dr. Vosen claims 12 communications and entries are protected under the work-product

doctrine.[5]

The attorney-client privilege and work product protection protect distinct interests.  *See*

*United States v. Am. Tel. and Tel. Co*., 642 F.2d 1285, 1299 (D.C. Cir.1980).  Work product

protection seeks to "promote the adversary system by safeguarding the fruits of an attorney's trial

preparations from the discovery attempts of the opponent."  *Id.*; *see also* Fed. R. Civ. P. 26(b)(3).

For an attorney to properly prepare his client's case, he must be able to "assemble information, sift

what he considers to be the relevant from irrelevant facts, prepare his legal theories and plan his

strategy without undue and needless interference."  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

Whereas the attorney-client privilege maintains confidentiality, the work product doctrine protects

the integrity of the adversary system.  *See Am. Tel. and Tel. Co*., 642 F.2d at 1299.

The work-product privilege is a "qualified immunity [that] protect[s] from discovery

documents and tangible things prepared by a party or his representative in *anticipation* of

litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th

Cir. 1989) (emphasis added).  A document should be "deemed prepared in anticipation of

litigation" if "in light of the nature of the document and the factual situation in the particular case,

the document can be fairly said to have been prepared or obtained because of the prospect of

litigation."  *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.),* 357 F.3d 900, 907 (9th

Cir. 2004) (citation omitted). Dr. Vosen characterizes the communications to which work-product

protection allegedly attaches as those in which certain employees were "seeking or receiving legal

advice or work product of counsel."  (Dkt. No. 12-4 at 25.)

While the documents may not be inconsistent with the adversary system, this on its own

---

[5] VOSEN0000029; VOSEN-PRIV-0318; VOSEN-PRIV-0380; VOSEN-PRIV-0385; VOSEN-PRIV-0386; VOSEN-PRIV-0399; VOSEN-PRIV-0405; VOSEN-PRIV-0424; VOSEN-PRIV-0425; VOSEN-PRIV-0456; VOSEN-PRIV-0458; VOSEN-PRIV-0467.

United States District Court
Northern District of California

does not mean they were prepared in anticipation of litigation.  Of the 12 documents Dr. Vosen

claims are protected by the work-product doctrine, 7 were not prepared in anticipation of

litigation.[6]  Just because patents may someday become the subject of litigation does not mean that

every communication regarding a patent is a communication made in anticipation of litigation; to

hold otherwise would mean virtually any communication regarding a patent would qualify for

work product protection.  Regarding the remaining five that discuss patent infringement or

infringement analyses, "a company cannot claim work product protection for emails and

documents between non-lawyers discussing . . . analyses of [other] companies' patents . . . .

Invocation of the work product doctrine requires more."  *Largan Precision Co, Ltd v. Genius Elec.

Optical Co.*, No. 13-CV-02502-JD, 2014 WL 12643367, at *2 (N.D. Cal. Dec. 21, 2014).  Here,

VOSEN-PRIV-0380, VOSEN-PRIV-0385, and VOSEN-PRIV-0399 are communications between

non-lawyers discussing analyses of other companies' patents and potential infringements.  As in

*Largan*, these analyses do not qualify for work product protection simply because they were

prepared in the context of potential patent infringement.  Dr. Vosen's invocation of the work

product doctrine requires more to prove it is applicable, and the fact that these particular

documents over which he claims work product protection "involved no attorneys is another good

sign that they were not prepared in anticipation of litigation."  *See Largan*, 2014 WL 12643367, at

*2.

VOSEN-PRIV-0425 references comments made by InterDigital's patent attorney;

however, this mention does not change the fact that the document, which does not include any

attorney among its recipients, primarily concerns Express Mobile's patent offering for Intellectual

Ventures and that the document's infringement analyses were prepared in the context of a

potential transaction rather than anticipated litigation.  Similarly, VOSEN-PRIV-0424 mentions

that Pete Marshall, an attorney included on the communication, had "started a process with Cooley

[LLP] to analyze the patents inside their patent litigation group" and planned to introduce Mr.

---

[6] VOSEN0000029; VOSEN-PRIV-0318; VOSEN-PRIV-0386; VOSEN-PRIV-0405; VOSEN-PRIV-0456; VOSEN-PRIV-0458; and VOSEN-PRIV-0467 (communication mentioning *pending*—not anticipated—patent litigation's financial effects on Express Mobile to a large number of recipients and attaching legal filings).

United States District Court
Northern District of California

United States District Court
Northern District of California

Rempell to another patent law firm.  However, an e-mail string between business associates "regarding possible patent infringement in anticipation of litigation would require some foundational basis to meet the requirement of impressions, conclusions, or theories of counsel" as required under the work product doctrine.  *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. C11-5503 BHS, 2015 WL 196713, at *3 (W.D. Wash. Jan. 14, 2015).  Mr. Marshall's inclusion on the e-mail does not on its own trigger the work product doctrine's protection, especially in this circumstance where he makes no response to Mr. Rempell's message that would show any impression, conclusion, or legal theory regarding the patents.  *See Vidal v. Metro-N. Commuter Ry. Co.*, No. 3:12CV0248 MPS WIG, 2014 WL 413952, at *5 (D. Conn. Feb. 4, 2014) ("A document also is not privileged merely because it was sent to or received by an attorney[.]").  Therefore, because VOSEN-PRIV-0424 does not demonstrate the "foundational basis" of "impressions, conclusions, or theories of counsel" despite including in its recipients an attorney, and its mention of law firms and patent litigation, it does not qualify for work product protection either.[7]

Dr. Vosen has failed to show that any of the 12 documents for which he claims the work-product privilege were prepared in anticipation of litigation.  His claims that they fall under the privilege fail.  These documents are therefore beyond the privilege's protective reach.

### E.  Communications with Marcia Rempell

Shopify argues that even if the Court finds certain communications privileged, it should also find that Express Mobile waived the privilege as to communications that were shared with Marcia Rempell after 2012; Ms. Rempell stopped working for Express Mobile after 2012 and has never been involved with patent prosecution.  The Court disagrees.

From 2006 to 2012, Ms. Rempell served as Express Mobile's Office Manager.  (Dkt. No. 12-8 at 2 ¶ 6.)  In this role, Ms. Rempell's work "can largely be characterized as general office support, [performing] tasks such as bookkeeping, purchasing, making travel arrangements, and

---

[7] VOSEN-PRIV-0424 includes third-parties whose employment status and relationship to Express Mobile were not briefed by the parties in response to Shopify's original motion to compel.  However, because the Court finds the document does not enjoy any underlying privilege, the inclusion of these third-parties does not present any issue of waiver.

other ministerial activities." (Dkt. No. 12-8 at 2 ¶ 7.) Ms. Rempell functioned as an administrative assistant to Express Mobile's CEO, Steven Rempell, where she "received and organized correspondence between Express Mobile and its legal service providers including its patent-agents, and calendered or docketed associated deadlines. (*Id.*) From 2013 to present, despite no longer having the title "Office Manager", Ms. Rempell, who is Mr. Rempell's spouse, performed and continues to perform many of the same functions and responsibilities as she did from 2006 to 2012. (*Id.* at ¶ 10.)

The attorney-client privilege protects "communications made by the client to the attorney's ministerial employees (e.g., secretary, paralegal)[.]" *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1070 n.2 (N.D. Cal. 2002). After 2012 Ms. Rempell served as the "functional equivalent" of an employee such that her inclusion on the communications does not constitute waiver. *See United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010). The Court is unpersuaded by Shopify's insistence that Dr. Vosen has provided insufficient information to evaluate whether Ms. Rempell's employment was sufficient to make her a functional employee, and Shopify's attempts to distinguish *Graf* on the grounds that Ms. Rempell's work for Express Mobile after 2012 "does not reflect an analogous degree of involvement" such that she should be considered a functional employee. (Dkt. No. 17-4 at 14.)

**F. Status of Other Third Parties**

Several of the withheld communications include individuals who are not Express Mobile employees.[8] Dr. Vosen argues that their inclusion does not waive the privilege because they, as Ms. Rempell, are functional equivalents of Express Mobile employees. Dr. Vosen contends that Ed Horowitz was a "Senior Advisor" and "investor" at Express Mobile, and was "presented to others as part of 'The Team.'" (Dkt. No. 12-4 at 23-24.) David Hytha, "director and advisor of Express Mobile," was likewise described as a member of "The Team" in presentations Express Mobile gave to investors. (Dkt. No. 12-4 at 23.) Jesse Quatse was "Express Mobile's VP,

---

[8] Of the documents protected by the patent-agent privilege, the following include individuals who are not Express Mobile employees, Ms. Rempell or Dr. Vosen: VOSEN0000091, VOSEN-PRIV-0159, and VOSEN-PRIV-0234.

United States District Court
Northern District of California

1   Professional Services and advisor." (*Id.*) "All three," according to Dr. Vosen, "were integral to

2   Express Mobile and assisted its attorneys or agents in rendering legal advice." (Dkt. No. 12-4 at

3   24.) Similarly, Stephen Taylor and Peter Meechan advised "Mr. Rempell regarding patent

4   prosecution, monetization, and litigation of Express Mobile patents," and were "at least

5   'functional employees' at the time of communication." (Dkt. No. 12-4 at 25.)

6           It is the burden of the party asserting a privilege to show the privilege has not been waived.

7   *Wadler v. Bio-Rad Labs., Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016) (citing *United States v.*

8   *Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). The Court finds Dr. Vosen has met this burden.

9   A third-party need not be a "traditional employee," or even a "traditional consultant" in order to

10  qualify as the functional equivalent of an employee and preserve the attorney-client privilege

11  attached to a communication. *Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C04-03843

12  RMWHRL, 2007 WL 39373, at *3 (N.D. Cal. Jan. 4, 2007). In *Memry Corp.*, an advisor and

13  agent's financial interest in a company, coupled with the fact that "[v]arious third parties ha[d]

14  dealt with him as a representative of [the company]" supported a finding that he was the

15  company's functional employee. *Id.* Here, Mr. Horowitz and Mr. Hytha were both held out to

16  investors as members of the Express Mobile "Team," and, as advisors, had interests in the

17  company's financial health. Mr. Quatse even had a formal title: Express Mobile's VP,

18  Professional Services. The dispositive question, however, is the individual's relationship to the

19  company, and whether he "possesses information about the company that would assist the

20  company's attorneys in rendering legal advice[;]" if so, the individual may be found to be a

21  functional employee. *See U.S. ex rel. Strom v. Scios, Inc.*, No. C05-3004 CRB JSC, 2011 WL

22  4831193, at *4 (N.D. Cal. Oct. 12, 2011). Given that all three parties assisted Express Mobile's

23  attorneys in rendering legal advice—taken together with their financial interests in Express

24  Mobile, and how they were held out as its representatives—this sufficiently demonstrates that they

25  were its functional employees.

26          Under *Scios*, Mr. Taylor and Mr. Meechan, advisors to Express Mobile, are functional

27  employees as well, given their knowledge of the company's patent prosecution and litigation, as

28  well as their involvement in helping the company seek and receive legal advice. Their knowledge

11

United States District Court
Northern District of California

1    of and involvement in Express Mobile's patent litigation gave them information that could assist

2    the company's attorneys in rendering legal advice, and this is sufficient to make them Express

3    Mobile's functional employees.  *See Scios*, 2011 WL 4831193, at *4; *see also Schaeffer v.*

4    *Gregory Vill. Partners, L.P.*, No. 13-CV-04358-JST, 2015 WL 166860, at *4 (N.D. Cal. Jan. 12,

5    2015) (finding a consultant who "perform[ed] work that [was] substantially intertwined with the

6    subject matter of a corporation's legal concerns" was its functional employee).

7         Dr. Vosen has met his burden of demonstrating these third-parties are functional

8    employees.  Shopify's citation to *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

9    *Progress*, No. 16-cv-00236-WHO (DMR), 2019 WL 1950381, at *6 (N.D. Cal. May 1, 2019), is

10   unavailing because *Planned Parenthood* is factually distinguishable.  Unlike these individuals

11   working for and at Express Mobile, there was insufficient information in *Planned Parenthood* to

12   determine when select third parties "performed work for [an entity], details about [an employee's]

13   duties and responsibilities in either role, how long [the employee] performed work for [the entity],

14   or how frequently [the employee] worked."  *Id.*  The record was also silent as "to whether

15   individuals outside of [the entity] perceived [the employee] as an agent or representative," a

16   problem cured here by the status Mr. Horowitz and Mr. Hytha enjoyed as members of "The

17   Team," as well as Mr. Quatse's title as "Express Mobile's VP, Professional Services and advisor."

18   *Id.* (*See also* Dkt. No. 12-4 at 23-24.)

19        Accordingly, this Court finds that the third parties Dr. Vosen discussed in his opposition to

20   Shopify's motion to compel are functional employees and that their inclusion on certain

21   documents does not constitute a waiver of privilege.[9]  However, such documents must be

---

[9] The Court notes, however, that several documents produced for *in camera* review that enjoy
protection under the patent-agent privilege include third-parties whose employment status and
relationship to Express Mobile were not briefed by the parties in response to Shopify's original
motion to compel. *See, e.g.*, VOSEN0000091, VOSEN-PRIV-0159; VOSEN-PRIV-0234.
While the Court finds the content of these particular documents accords them protection under the
patent-agent privilege, the Court cannot determine if this underlying protection was waived by the
inclusion of third-parties whose employment status and relationship to Express Mobile was not
briefed for the Court. VOSEN-PRIV-0399 provides some guidance and states that John Rizzo, a
third-party on many documents produces for *in camera* review, was a Director of Express Mobile.
Of the three privileged documents on which he appears, VOSEN-PRIV-0159, VOSEN-PRIV-
0234, and VOSEN0000091, all contain additional third-parties whose status was not briefed for
this Court such that—even taking Mr. Rizzo's title alone as proof he is an employee of Express

United States District Court
Northern District of California

1    protected by an underlying privilege in order for these parties' status as functional employees to

2    become relevant.

3        **G.  Common Interest Privilege**

4        Some of the withheld communications were shared with third parties whom Express

5    Mobile does not appear to contend were "functional employees."  Instead, Express Mobile claims

6    that the disclosure of these communications to these third parties did not waive the privilege

7    because the sharing of the communications was protected by the "common interest privilege."

8        The common interest doctrine is a narrow exception to the general rule that "disclosing

9    information to a third party constitutes a waiver of the attorney-client privilege."  *Integrated Glob.*

10   *Concepts, Inc. v. j2 Glob., Inc.*, No. 512CV03434RMWPSG, 2014 WL 232211, at *2 (N.D. Cal.

11   Jan. 21, 2014) (citation omitted).  The common interest privilege "does not make a document or

12   communication privileged; rather, it is a doctrine that prevents waiver of a pre-existing privilege if

13   the privileged information is shared only with those with a common legal interest. Thus, it is not

14   technically a privilege in and of itself but instead constitutes an exception to the rule on waiver

15   where communications are disclosed to third parties."  *Waymo LLC v. Uber Techs., Inc.*, No. 17-

16   cv-00939-WHA (JSC), 2017 WL 2485382, at *7 (N.D. Cal. June 8, 2017) (internal quotation

17   marks and citation omitted).  It applies where: "(1) the communication is made by separate parties

18   in the course of a matter of common interest; (2) the communication is designed to further that

19   effort; and (3) the privilege has not been waived."  *United States v. Bergonzi*, 216 F.R.D. 487, 495

20   (N.D. Cal. 2003).

21       Dr. Vosen designated 13 documents as protected by the common interest privilege, and

22   only two—VOSEN0000091 and VOSEN-PRIV-0234—are protected by an underlying privilege.

23   These documents concern aspects of a pending patent but include third-parties whose relationship

24   to Express Mobile was not briefed.  Thus, this Court is unable to determine if their inclusion

25   would constitute a waiver of the attached privilege.

26       Dr. Vosen argues that communications including Jeff Ronaldi ("Mr. Ronaldi"), DSS's

27   _____

28   Mobile—this does not cure the Court's inability to say definitively whether other parties'
     inclusion does or does not constitute a waiver.

1   CEO, are shielded by the common interest privilege after Express Mobile and DSS signed a Non-

2   Disclosure Agreement ("NDA") because, after its signing, the two began to share a common legal

3   interest.  On April 10, 2013, Express Mobile and Mr. Ronaldi, a third party whom Express Mobile

4   approached regarding a possible sale of certain patents, entered into the ("NDA") in which the

5   parties stated they shared a "common, joint and mutual legal interest" in the monetization of "valid

6   and enforceable patents."[10]  (Dkt. No. 12-39 at 2 ¶¶ 4-4.1.)

7          Dr. Vosen's "common interest privilege" assertion fails because a common legal interest

8   does not create a privilege "in and of itself" and does not on its own make documents privileged—

9   it can only prevent the waiver of an underlying privilege.  *See Waymo LLC*, 2017 WL 2485382, at

10   *7.  Therefore, absent a document's pre-existing privilege, the NDA does not *itself*—despite its

11   assertion of the parties' common legal interest—present a sufficient or standalone basis for

12   asserting a privilege over communications involving Mr. Ronaldi after the NDA was signed.  The

13   three documents presented to the Court for *in camera* review—VOSEN0000041, VOSEN-PRIV-

14   0299, VOSEN-PRIV-0458, (*see* Dkt. No. 1-4 at 21)—are not protected by any underlying

15   privilege; therefore, there is no possible waiver the common interest doctrine could prevent.

16   Because these documents are not protected by a pre-existing privilege, and the parties' NDA

17   cannot create a common interest privilege in and of itself, there is no basis for shielding these three

18   documents from production.

19   **II.      Dr. Vosen's Administrative Motion to File Under Seal**

20          There is a presumption of public access to judicial records and documents.  *Nixon v.*

21   *Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  "It is well-established that the fruits of pretrial

22

23   [10] Express Mobile engaged in similar negotiations with InterDigital and its executive Keith
24   Woomer.  (Dkt. No. 12-6 at 7-8 ¶¶ 41-43.)  Dr. Vosen contends the communications Shopify seeks
    regarding these negotiations are privileged and "protected from disclosure for the same reasons as
    those with Mr. Ronaldi," the only difference being that the agreement between Express Mobile
25   and InterDigital was unwritten.  (Dkt. No. 12-4 at 29.)  However, this single fact is not dispositive
    regarding any privilege the InterDigital documents enjoy.  *See Regents of Univ. of California v.*
26   *Affymetrix, Inc.,* 326 F.R.D. 275, 279 (S.D. Cal. 2018) ("[T]he parties must make the
    communication in pursuit of a joint strategy in accordance with some form of agreement—
27   whether written or unwritten.").  Therefore, on the basis of Steven Rempell's declaration and the
    arguments in Dr. Vosen's opposition, the Court's analysis of Express Mobile's allegedly
28   privileged communications with DSS are cross-applicable to those with InterDigital, with no
    controlling weight given to the unwritten nature of the InterDigital communications.

discovery are, in the absence of a court order to the contrary, presumptively public.  [Federal Rule of Civil Procedure] 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (citations omitted).  Sealing is appropriate only where the requesting party "establishes that the document, or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law," or "sealable."  N.D. Cal. Civ. L.R. 79–5(b).  A party may meet this burden by showing that the information sought to be withheld creates a risk of significant competitive injury and particularized harm.  *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir.2006).  A party may also meet this burden where disclosure of the information would violate a party's legitimate privacy interest that similarly lead to such risk.  *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1, 2007) ("[C]ompelling reasons exist to keep personal information confidential to protect an individual's privacy interest and to prevent exposure to harm or identity theft.")

Here, Dr. Vosen seeks to file under seal 18 exhibits submitted in connection with his opposition to Shopify's motion to compel as well as portions of his opposition, and declarations of Steven Rempell ("S. Rempell Declaration") and Marcia Rempell ("M. Rempell Declaration") supporting this opposition.  (*See* Dkt. No. 12.)  Dr. Vosen also seeks to file under seal portions of Exhibits 1, 5, 7, and 12-27 to the Declaration of James R. Nuttall ("Nuttall Declaration").  (*See* Dkt. No. 12.)  The Court considers these requests below.

**A.  Dr. Vosen's Opposition to Motion to Compel**

Dr. Vosen moves to seal portions of his opposition to Shopify's motion to compel.  The portions Dr. Vosen seeks to seal concern a description of Marcia Rempell's job responsibilities. (Dkt. No. 12-4 at 8.)  Because this portion of the opposition summarizes Marcia Rempell's job responsibilities—rather than divulge any confidential information regarding the content of her work or tasks—and does not contain any personal information other than the fact that "[Marcia Rempell] is an owner of Express Mobile and serves as [Steven] Rempell's assistant," the Court

finds no reason to seal this excerpt.[11]  (*Id.*)  Similarly, Dr. Vosen offers the titles of various

Express Mobile employees.  (*Id.* at 8-9.)  Because employees' titles do not reveal confidential

information that would otherwise warrant sealing, and because Dr. Vosen concedes that Ed

Horowitz was even "held out by Express Mobile as part of 'The Team[,]'" the Court sees no need

to seal these job titles.[12]  That Dr. Vosen seeks to redact Shopify's description of these employees

as "advisors" has more to do with Shopify's *characterization* of the employees' titles than any

confidential personal or commercial information Shopify's descriptions inappropriately expose.[13]

(Dkt. No. 12-4 at 9.)  As Dr. Vosen attempts to seal Shopify's characterization of employee's

titles, so too does he attempt to seal information regarding Ed Horowitz, Stephen Taylor, and Peter

Meechan on the basis that they "worked in confidence with Mr. Rempell and assisted Express

Mobile in both business and legal matters."  (*Id.* at 10.)  Absent mention of what, if any, aspects of

this assistance were confidential, the Court finds no reason to seal this excerpt.[14]

     Dr. Vosen's attempt to seal mention of Express Mobile's "discuss[ion] with third parties

---

[11] Dr. Vosen refers again to Marcia Rempell as an owner of Express Mobile and outlines her job duties as the Vice President of Operations for Akira Technologies, Inc. ("Akira"), a company founded in 2006 by husband Steven Rempell, and as Express Mobile's Office Manager.  (Dkt. No. 12-4 at 9).  While Dr. Vosen elaborates that Marcia Rempell "organized correspondence between Express Mobile and its legal service providers including its patent-agents," this description of Ms. Rempell's duties fails to present any new facts that must be kept under seal. (*See also* Dkt. No. 12-4 at 19-21; 23.)  While Ms. Rempell understood herself to work with "documents and correspondence [that was] confidential and had the purpose of communicating, seeking, or receiving legal advice," this understanding is insufficiently specific to demonstrate good cause for sealing or any harm Ms. Rempell and Express Mobile would suffer from its public disclosure. (Dkt. No. 12-4 at 22.)

[12] Similarly, Dr. Vosen offers the names of employees and their titles elsewhere in the opposition. (*See* Dkt. No. 12-4 at 10; 23-24.)  These later recitations likewise fail to warrant sealing.

[13] Dr. Vosen later attempts to seal his own broad mention of Express Mobile's "investors/owners" and the nature of their "investment/ownership" in a supplemental privilege log.  (Dkt. No. 12-4 at 13.)  This language as written in the opposition, however, makes no reference to specific individuals that might otherwise implicate the personal, confidential, or proprietary information sealing is intended to protect.  Later mentions of "investors" and "advisors" are undeserving of redaction for the same reason.  (Dkt. No. 12-4 at 17.)

[14] Dr. Vosen later attempts the same feat, requesting this Court seal "Express Mobile's produc[tion] [of] more than over 100 documents exchanged between Express Mobile and Mr. Ronaldi [of DSS] that relate to their business, not legal interests."  (Dkt. No. 12-4 at 18.)  Mere mention of a business interest, however, without discussing its nature or the documents' content does not provide this Court with the requisite good cause to seal.  Similarly, stating that employees of or advisors to Express Mobile communicated or sought non-specific legal advice—even some regarding "patent prosecution, monetization, and litigation of Express Mobile patents"—does not offer good cause to seal this excerpt of the opposition.  (Dkt. No. 12-4 at 25.)

United States District Court
Northern District of California

[regarding] the 'well-documented examples of [patent] infringement on the part of various entities'" is improper, because the requested redaction does not offer any detailed technical descriptions of which patents suffered infringement. (Dkt. No. 12-4 at 10.) Efforts to seal memorialization of Express Mobile's non-disclosure ("NDA") and common interest agreements with DSS fail similarly—the excerpts mention only the formation of the parties' NDA, not its contents, details of specific patents it concerned, or any proprietary or confidential business information. (*Id.* at 11.) Dr. Vosen later quotes the NDA; however, the excerpted quotation offers no confidential business information or mention of specific patents over which Express Mobile and DSS held a "common, joint, and mutual legal interest" and agreed they would not disclose.[15] (Dkt. No. 12-4 at 26.)

Dr. Vosen's efforts to redact a legal argument regarding the common interest doctrine's application to patent monetization "particularly when under NDA[s]" fails to offer good cause because it is insufficiently specific and it is a legal argument whose gravamen is a summary of published caselaw. An effort to characterize communications between Express Mobile and DSS as "in furtherance of common legal interests" is undeserving of sealing for its failure to describe the underlying legal interest or proprietary information. (Dkt. No. 12-4 at 28; *see also id.* at 29.) Regarding Express Mobile's conversations with InterDigital's "shared legal interest in obtaining, monetizing, and enforcing valid patents," Dr. Vosen does not make a showing of good cause to seal. (Dkt. No. 12-4 at 29.)

Mention of "patent prosecution histories" offers no good cause to seal when the opposition offers no specific parents to which Dr. Vosen's histories refer. (*Id.* at 13.)

**B. Declaration of Steven Rempell**

Paragraph four's first sentence may be redacted because it presents personal information in which Mr. Rempell has a privacy interest that is not at issue in the parties' briefing, *see Nursing*

---

[15] Dr. Vosen attempts to seal highlighted language regarding the parties' conduct following the NDA's signing, namely that they shared "confidential, privileged, and work product materials" related to patent prosecution and "patent monetization/litigation." (Dkt. No. 12-4 at 26-27.) Description of the parties' conduct does not offer good cause for sealing. Dr. Vosen seeks later to seal information Express Mobile shared with DSS that was "not privileged," for which there is a clear lack of any cause to seal. (Dkt. No. 12-4 at 28.)

United States District Court
Northern District of California

1 | *Home Pension Fund*, 2007 WL 3232267, at *2, but the portion of the second sentence regarding

2 | Express Mobile's patent monetization does not present personal or confidential information and

3 | does not warrant sealing.

4 |       The S. Rempell Declaration also outlines the work responsibilities of Marcia Rempell.

5 | (Dkt. No. 12-6 at 2-3.)  The description of Ms. Rempell's responsibilities in the S. Rempell

6 | Declaration are duplicative of those in Dr. Vosen's opposition, and as such do no occasion

7 | sealing.[16]  However, to the extent this information is not publicly available, Dr. Vosen may redact

8 | the exact percentage of Express  Mobile currently owned by Ms. Rempell.  (Dkt. No. 12-6 at 3.)

9 |       Mr. Rempell also reiterates the job description of David Hytha, and states that Hytha

10 | periodically sent confidential correspondence on behalf of Mr. Rempell concerning legal matters,

11 | patent prosecution, monetization, and litigation.  Mr. Rempell also states that Hytha was included

12 | on select correspondence to help Express Mobile secure "legal advice from [Express Mobile's]

13 | legal advisors[.]"  (Dkt. No. 12-6 at 4.)  There is no need for this summary of duties and

14 | correspondence—without any explication that correspondence that could give Express Mobile's

15 | competitors an advantage if disclosed—to be kept confidential.  Because Mr. Rempell's

16 | descriptions of Jesse Quatse, Ed Horowitz, Stephen Taylor, and Peter Meechan are similarly non-

17 | specific, they are similarly undeserving of sealed protection.  (Dkt. No. 12-6 at 4-6.)  Mr.

18 | Rempell's discussion of Jeff Ronaldi's correspondence offers no good cause either, but to the

19 | extent that Mr. Rempell's statement regarding the exact amount of DSS's purchase of Express

20 | Mobile common stock is not publicly available it may be sealed.  (Dkt. No. 12-6 at 6-7 ¶ 38.)

21 | Nothing, however, regarding Mr. Rempell's description of Keither Woomer's work at InterDigital

22 | presents good cause for sealing, given that Mr. Rempell offers no more than a generic summary of

23 | their correspondence.  (Dkt. No. 12-6 at 7-8.)  Furthermore, while Mr. Rempell says Express

24 | Mobile was "prepared to share with Interdigital examples of infringements of Express Mobile's

25 | patents," no specific examples of infringements are offered.  (Dkt. No. 12-6 at 7.)

26 |

27 |

28 | [16] That Mr. Rempell "intentionally included" Ms. Rempell on correspondence regarding undefined "legal matters" does not render this language worthy of sealing.  (Dkt. No 12-6 at 2-3.)

United States District Court
Northern District of California

18

1
2
3
4
5
6
7
8
9
10
11
12

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.  Declaration of Marcia Rempell**

As in Dr. Vosen's opposition and the S. Rempell Declaration, Marcia Rempell's declaration does nothing more than summarize her job responsibilities as "administrative assistant" to Express Mobile's CEO. That she understood correspondence concerning "legal matters" to be "confidential" and "still continue[s]" to "perform many of the same functions" now—despite no longer holding the title of Express Mobile's "Office Manager"—does not render generic language specific, nor does it furnish good cause to seal.  (Dkt. No. 12-8 at 2-3.)  To the extent this information is not publicly available, Dr. Vosen may redact the exact percentage of Express Mobile currently owned by Ms. Rempell listed in the declaration.  (Dkt. No. 12-8 at 3.)

**D. Nuttall Declaration and Exhibits**

The Court takes in order the Exhibits attached to the Nuttall Declaration that Dr. Vosen seeks to file under seal.

Exhibit 1 does not contain any information that would be injurious to Express Mobile's commercial interests, and as such it does not warrant sealing.[17]  (*See* Dkt. No. 12-9).

Dr. Vosen argues that Exhibit 5, "a privilege log of Dr. Vosen," to the Nuttall Declaration warrants sealing because it identifies personal information of individuals related to Dr. Vosen and Express Mobile, and that the log contains "trade secret or other . . . commercial information [whose] disclosure presents a significant risk of harm to Express Mobile and third-parties."  (Dkt. No. 12 at 3-4.)  The Court disagrees that Exhibit 5 contains any potentially harmful trade secret or commercial information because its "Privilege Description[s]" go no further than to state when documents "reflect[] legal advice[,]" and/or "work product of counsel[,]" relating to patent litigation.  (*See* Dkt. No. 12-11.)  However, to the extent that individual entries list personal or identifying information of parties, including names and e-mail addresses, who are not involved with or incident to the current litigation where disclosure of the information would violate a party's legitimate privacy interest good cause exists to seal this identifying information.[18]  *See Nursing*

---

[17] Exhibit 25 is substantially similar and for the same reason will not be sealed.  (*See* Dkt. No. 12-38.)

[18] As substantially similar documents, Exhibits 15, 16, 17, 18, and 20 are subject to the same analysis.  (*See* Dkt. No. 12-21; 12-23; 12-25; 12-27; 12-31)

19

1    *Home Pension Fund,* 2007 WL 3232267, at *2.

2          Exhibit 7 "is correspondence that refers or relates to a privilege log of Dr. Vosen," whose

3    disclosure Dr. Vosen argues would harmfully expose trade secret and personal information.  (Dkt.

4    No. 12 at 4.)  The Exhibit's statement that Dr. Vosen's privilege log references "individuals that

5    do not appear to be attorneys" whose relationship to Express Mobile/Akira "is unclear" does not

6    offer good cause for sealing, nor do the Exhibit's broad statements regarding Dr. Vosen's

7    calendaring software or Express Mobile engagement letter.  (Dkt. No. 12-13 at 2-4.)  However, to

8    the extent that the Exhibit lists the names of parties who are not involved with or incident to the

9    current litigation where disclosure of the information would violate a party's legitimate privacy

10   interest good cause exists to seal this identifying information.  *See Nursing Home Pension Fund,*

11   2007 WL 3232267, at *2.

12         Exhibit 12 does no more than state Dr. Vosen had a "catch all description" for unidentified

13   "owners, investors, employees, or agents of Express Mobile."  (Dkt. No. 12-15 at 2.)  This

14   language, as in his opposition, is undeserving of seal.  Exhibits 13, 14, and 19 fail to offer good

15   cause to seal for the same reason: they do no more than refer to Express Mobile's investors,

16   owners, and employees.[19]  (Dkt. No. 12-17 at 2-3; Dkt. No. 12-19 at 2-4; Dkt. No. 12-29 at 2-5.)

17   Exhibit 15's mentions of investors and owners warrant no sealing; the Exhibit's privilege log—

18   while containing more entries than Dr. Vosen's privilege log in Exhibit 5—suffers the same defect

19   of its earlier counterpart in that it is insufficiently specific to betray any potentially harmful trade

20   secret or commercial information.[20]  (*See* Dkt. No. 12-21.)  So too does Exhibit 21 offer no more

21   than a general description of Ms. Rempell's job, other employees' titles, and a broad statement of

22   the "mutual legal interest" between Express Mobile and DSS regarding their NDA.[21]  (*See* Dkt.

23

24   _____

     [19] Exhibit 14 additionally states in part that Dr. Vosen was told by Mr. Nuttall that his original
25   privilege log had been produced.  (Dkt. No. 12-19 at 2.)  This simply states an action, and does not
     betray any confidential information contained in the produced log.
26   [20] To the extent that Exhibit 15 summarizes parties' "[r]elationships to Express Mobile" at 12-
     21:62 this information is only sealable for parties whose privacy interests would be violated by
27   disclosure—otherwise, the "[r]elationships" do no more than describe parties' conduct and titles,
     without divulging any personally confidential or commercially harmful information.
28   [21] Exhibit 22 is substantially similar and therefore offers no good cause to seal.  (*See* Dkt. No. 12-
     35.)

United States District Court
Northern District of California

No. 12-33.)  Exhibits 23 and 24 are a company overview and presentation documents that offer no good cause to seal.  (*See* Dkt. No. 12-36.)  Exhibit 26 is the NDA signed by Express Mobile and DSS; Exhibit 27 is the Common Stock Purchase Agreement signed by the parties.  (*See* Dkt. No. 12-39).  Because the NDA does not disclose any potentially compromising information regarding the parties' underlying business interests or patents—only that the parties assented to the NDA's terms—it does not qualify for sealing because it does not betray any information sealing is designed to shield from public view.  Contrastingly, Exhibit 27 contains confidential business information that is deserving of seal.

## III.    Shopify's Administrative Motion to File Under Seal

Shopify moves to file under seal documents submitted in support of its motion to compel Steven Vosen's obtained from Express Mobile through discovery, and that Express Mobile designated as "HIGHLY CONFIDENTIAL[]" under the parties' Protective Order. (Dkt. No. 17 at 2.)  *See Shopify (USA), Inc., et al v. Express Mobile, Inc*., Civil No. 19-cv-439 (RGA).  Shopify also moves to file under seal certain portions of its Motion to Compel that reference the documents at issue.  Plaintiffs submit the declaration of counsel Adam R. Brausa, who attests that Plaintiffs were required to file the material under seal pursuant to "the applicable protective order in this case" because Defendant designated the material as "HIGHLY CONFIDENTIAL[]" and for "ATTORNEYS' EYES ONLY[.]"  (Dkt. No. 17-1 at 2.)

Under the Local Rules of this District, where a party seeks to file under seal any material designated as confidential by another party, the submitting party must file a motion for a sealing order. *See* Civil L.R. 79-5(d)-(e).  Dr. Vosen has timely filed a declaration arguing that certain documents submitted in support of Plaintiffs' Motion to Compel are and should remain sealable. (Dkt. No. 20 at 2.)  *See* Civil L.R. at 79-5(e)(1).

As Dr. Vosen requests, conditionally sealed Exhibits 15 and 20 filed in support of Plaintiffs' motion to compel are unsealed.  (Dkt. Nos. 17-11; 21.)  The Court now considers documents "conditionally filed under seal by Shopify" that Dr. Vosen contends are sealable.  (Dkt. No. 20 at 3.)  At bottom, Dr. Vosen argues that the identified documents warrant sealing on the basis of trade secret protection, and that select documents contain personally identifiable

1    information of third parties with cognizable privacy interests.  (Dkt. No. 20 at 7.)  The Court

2    considers these documents below.

3            Dr. Vosen argues that Shopify's Reply to Dr. Vosen's Opposition ("Reply") contains

4    "trade secrets or other personally identifiable [and] confidential [] or commercial information, the

5    disclosure of which presents a significant risk of harm [to] Express Mobile and third-parties."

6    (Dkt. No. 20 at 7 ¶ 10.)  However, the Reply does no more than offer employees' titles and

7    describe their duties; furthermore, the Reply makes no mention of specific patents—much less any

8    confidential patent or commercial information—such that unsealing the highlighted language

9    would create a risk of particularized harm for Defendant.  *See Phillips*, 307 F.3d at 1211.

10   Therefore, no good cause exists for sealing portions of Shopify's Reply.

11           Express Mobile argues that Exhibit 13, a privilege log of Dr. Vosen, attached to the

12   Declaration of Whitney O'Byrne ("O'Byrne Declaration") in support of the Reply should be filed

13   under seal because it "identifies the names, roles, and email addresses of individuals associated

14   with Express Mobile and Dr. Vosen, the dates of correspondence among those individuals, and the

15   subject matter of those correspondence," namely confidential trade secret information. (Dkt. No.

16   20 at 4.)  The privilege log identifies correspondence by date, author, recipients, those placed on a

17   "CC", a privilege description of the correspondence and the governing privilege type.  (*See* Dkt.

18   No. 17-8 at 2.)  As with Dr. Vosen's other privilege logs, Exhibit 13's privilege descriptions do

19   not articulate specific subjects or patents about which legal or patent advice was offered, nor do

20   certain entries' concern for "patent prosecution, monetization, and/or litigation" offer sufficient

21   detail or good cause to seal absent reference to a specific patent, confidential technical or

22   commercial information.  (*See* Dkt. no. 17-8.)  However, to the extent that Exhibit 13 reveals

23   identifying information of third-parties by authorship, receipt, or "CC" who are incident to the

24   current litigation, the Court finds good cause to seal this information.  (*See, e.g.*, Dkt. No. 17-8 at

25   11-12.)  *See Nursing Home Pension Fund,* 2007 WL 3232267, at *2.

26           Express Mobile argues that portions of Exhibit 14 attached to the O'Byrne Declaration

27   warrant sealing.  Absent reference to specific patents or commercial information, citations to

28   privilege descriptions in Exhibit 14 do not present sufficiently detailed trade secret information.

United States District Court
Northern District of California

1    (Dkt. No. 20-4 at 4.)  Additionally, mention of Dr. Vosen's engagement letter with Express

2    Mobile and use of a calendaring system that could export information regarding unspecified

3    patents offers no good cause to seal.  (*Id.* at 4-5.)  Exhibit 16 is undeserving of seal for

4    substantially similar reasons, insofar as it merely mentions Ed Horowitz's job titles at Express

5    Mobile and that he conducted "confidential negotiations" regarding "patent prosecution,

6    monetization, and/or litigation of [] Express Mobile patents" without any mention of specific

7    patents confidentially negotiated.  (Dkt. No. 20-6 at 3.)  Exhibit 16's mention of "investors" is

8    similarly ill-defined, and offers no basis for sealing.  (*Id.* at 4.)  Exhibit 17's mention of patent

9    monetization and litigation, without any discussion of specific, underlying patents, presents no

10   need for sealing.  (Dkt. No. 20-8 at 3.)  Exhibit 18 is an e-mail from CEO Steven Rempell to

11   various Express Mobile employees describing the "restart" of Express Mobile that links to a news

12   article.  (Dkt. No. 17-18 at 2.)  Because the e-mail's content links to a public article, and stating

13   the company would "restart" does not reveal any confidential business plans, the text of Exhibit 18

14   does not warrant sealing.  (*Id.*)  However, to the extent that its listed recipients would have any

15   personal or confidential information exposed absent redaction, the names of certain recipients may

16   be filed under seal.[22]  (*Id.*)  Exhibit 21 is an e-mail between Mr. Rempell and Jeff Ronaldi

17   discussing aspects of their patent negotiations.  (Dkt. No. 17-24 at 2.)  It is undeserving of seal

18   because it only discusses procedural aspects of their negotiations, not confidential aspects of the

19   underlying patents or content of the negotiation. Contrary to Defendant's position, Exhibit 22 does

20   not reveal any information regarding Express Mobile's business plans or trade secrets that would

21   present a particularized harm.  (Dkt. No. 17-26 at 2.)  The document, an e-mail conversation

22   between Mr. Rempell and Mr. Ronaldi, explicitly *requests* the "information [under the] nda [sic]"

23   be kept confidential.  (*Id.*)  As such, there is no underlying information whose exposure could

24   harm Defendant.

25   _____

26   [22] Exhibit 19 concerns travel arrangements and accommodations for a meeting involving Mr.
     Rempell.  (Dkt. No. 17-20 at 2-3.)  As with Exhibit 18, the e-mail's colloquy does not provide any

27   sealable information regarding Defendant's "business plans to monetize its patents"—only a
     logistical discussion between employees.  (*Id.*)  However, as with Exhibit 18, to the extent that its

28   listed recipients or participants would have any personal or confidential information exposed
     absent redaction, the names of certain employees may be filed under seal.

1   Exhibit 23 is deposition testimony of David Chrobak.  (Dkt. No. 17-28 at 2.)  Defendants

2   allege this testimony "contains information relating to Express Mobile's design and development

3   of web design and publishing products and business organization and plans," which is trade secret

4   information.  (Dkt. No. 20 at 9.)  The testimony, however, concerns a broad description of Mr.

5   Chrobak's job history at Vodaphone, and a timeline of his employment history at Express Mobile.

6   (Dkt. No. 17-28 at 3.)  As such, Dr. Chrobak's testimony implicates neither confidential personal

7   information nor Express Mobile's trade secrets.  Exhibit 24's disclosure likewise presents no harm

8   to Express Mobile, because the gravamen of the correspondence was Ms. Rempell's work history

9   and qualifications without any mention of a specific parent or trade secret.  (*See* Dkt. No. 17-30.)

10  As such, this Court concludes there is no good cause to seal.

### CONCLUSION

12  For the reasons explained above, the Court ORDERS that Dr. Vosen produce to Plaintiff

13  the unprivileged documents as set forth above, GRANTS in part and DENIES in part Shopify's

14  administrative motion to file under seal, and GRANTS in part and DENIES in part Dr. Vosen's

15  administrative motion to file under seal. Pursuant to Civil L.R. 79-5(f), the parties have seven days

16  to file revised redacted versions of the documents sought to be sealed.

17  This disposes of Dkt. No. 1.

18  **IT IS SO ORDERED.**

19  Dated: August 14, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge